## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

William Burrows, Jr., *on behalf of himself and those similarly situated,*

                    Plaintiff,

    vs.

DC Portfolio Services, LLC, Abrahamsen Ginden, LLC, and Joshua Gindin,

                    Defendants.

Case No. 2:22-cv-00260-SDA

---

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

David C. Ricci, Esq.
Law Office of David C. Ricci, LLC
51 JFK Parkway, First Floor West
Short Hills, New Jersey 07078
Tel. 973-218-2627; Fax 973-206-6955
Email: dricci@NJConsumerLawyer.com

*Attorney for Plaintiff and the Settlement Class*

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................1

II.   RELEVANT PROCEDURAL HISTORY ........................................3

III.  SUMMARY OF RELEVANT FACTS AND
      PLAINTIFF'S CLAIMS ...........................................................10

IV.   SUMMARY OF THE TERMS OF THE SETTLEMENT.....................11

  A.  DEFINITION OF THE PROPOSED SETTLEMENT CLASS ...................11

  B.  BENEFITS TO THE SETTLEMENT CLASS.....................................11

      Payment of $69.14 to Each Settlement Class Member ................11

      Settlement Administration...................................................12

      Payment of a Service Award to Plaintiff ................................13

      Defendants Will Pay Class Counsel's Fees and Expenses ....................13

  C.  RELEASE OF CLAIMS..........................................................14

V.    SUCCESSFUL IMPLEMENTATION OF THE
      COURT-APPROVED NOTICE PLAN .........................................15

VII.  LEGAL ARGUMENT ............................................................16

  A.  THE SETTLEMENT SATISFIES RULE 23(E)(2) ............................16

  B.  THE SETTLEMENT CLASS SATISFIES RULE 23(A) .........................20

    1.  The Settlement Class is Sufficiently Numerous......................21

    2.  The Claims of the Settlement Class Raise Common
        Questions of Law and Fact.............................................21

    3.  Plaintiff's Claims are Typical........................................23

    4.  Plaintiff and Class Counsel Will Adequately Represent
        the Settlement Class.....................................................24

    5.  The Settlement Class Satisfies Rule 23(b)(3) ..........................24

**C.** **APPLICATION OF THE GIRSH FACTORS TO THE SETTLEMENT** ...................**26**

   *1.* *Complexity, Expense and Likely Duration of the Litigation*...................*27*

   *2.* *The Reaction of the Class to the Settlement*................................*28*

   *3.* *Stage of the Proceedings and the Amount of Discovery Completed*.......*28*

   *4.* *Risks of Establishing Liability* ............................................*28*

   *5.* *The Risk of Establishing Damages*........................................*29*

   *6.* *Risk of Maintaining the Class Action Through the Trial* ......................*30*

   *7.* *Ability of the Defendants to Withstand Greater Judgment* ......................*31*

   *8.* *Range of Reasonableness of the Settlement in Light of*
      *the Best Possible Recovery and the Attendant Risks of Litigation*..........*31*

**D.** **THE AWARD TO THE NAMED PLAINTIFF IS APPROPRIATE**
   **AND  MERITS APPROVAL** ................................................**33**

**VIII.** **AWARD OF ATTORNEY'S FEES TO CLASS COUNSEL**..................**38**

**IX.** **CONCLUSION** .........................................................**39**

# **INTRODUCTION**

## I.    **Introduction**

On December 7, 2023, the Court entered an order granting Plaintiff's application that the Court make a front-end determination that it would be appropriate to send Notice to the proposed Settlement Class under Rule 23(c)((2)(B); to appoint Plaintiff's Counsel as Interim Counsel pursuant to Rule 23(g)(3); and to schedule a hearing to determine if the proposed Settlement is fair, reasonable, and adequate pursuant to Rule 23(e)(2).

Issues between Defendants and their attorneys led to significant delays after the class notice mailing. These issues eventually led Defendants attorneys to withdraw. With the authorization of the Court, Defendants escrowed the total amount of the settlement with Class counsel including the class relief, proposed award to the Plaintiff, the fees for settlement administration, and the proposed attorney's fees and costs. The Court also ordered a second notice mailing to the Settlement Class Members to inform them of the new final approval date on May 8, 2025, and provide an opportunity for members to object to the proposed award of attorney's fees and costs agreed to by the Parties. The Court also ordered a third notice mailing to the Settlement Class Members to inform them of the rescheduled final approval date on June 16, 2025.

Regarding the initial notice mailing, the Settlement Administrator effectuated the notice plan, successfully mailing the initial notice to 50 of the 52 Settlement Class Members, a 96.15% success rate, none of whom filed an objection or request for exclusion. The Settlement Administrator also successfully mailed the second notice to 47 of the 52 Settlement Class Members, a 90.38% success rate, none of whom filed an objection to the proposed attorney's fee award.

Regarding the second notice mailing, the Settlement Administrator effectuated the notice plan, successfully mailing the initial second notice to 47 of the 52 Settlement Class Members, a 90.38% success rate, none of whom filed an objection to the proposed award of attorneys' fees and costs.

Regarding the third notice mailing to alert the Settlement Class Members of the June 16, 2025 final approval date, the Court approved the notice on May 6, 2025. The Settlement Administrator has mailed the notice and will report back on the success rate of the mailing. Plaintiff will file a supplemental declaration with the results of the third notice mailing.

The Settlement Class Members are treated equitably – each of the remaining 47 Settlement Class Members will receive an equal share of $3,250 to be paid by the Defendants, or $69.14 per member. This amount exceeds the maximum that could have been achieved at trial under the Fair Debt Collection Practices Act. Checks will be mailed with no "claims made" process. Funds from uncashed

checks will be paid to Legal Services of Northwest Jersey, Inc., as a *cy pres* award. Defendants will pay for the cost of Settlement administration.[1]

The Settlement Agreement also provides for Defendants to pay $2,750.00 to Plaintiff for his combined FDCPA claim and a service award, and for Defendants to pay the reasonable attorney's fees and costs of Class Counsel. After being unable to agree on a settlement of attorney's fees and costs despite continued attempts, Plaintiff and Defendants (collectively, the "Parties") agreed to propose to the Court an award of $66,362.50 for attorney's fees and costs. The second class notice informed the Settlement Class Members of the proposed award and gave them an opportunity to object to the award. As of this date, no Member filed an objection.

The Settlement Agreement was negotiated at arm's length, and amount of attorney's fees to be awarded to class counsel were not discussed until the Settlement was fully executed. The payment of attorneys' fees and costs is in addition to the Settlement benefits each Member of the proposed Settlement Class will receive. The Settlement is fair and reasonable and provides excellent benefits to the Settlement Class and merits final approval.

## II.    Relevant Procedural History

---

[1] Since Defendants have escrowed all monies with Class Counsel, it will be Class Counsel who funds the settlement, pays the Settlement Administrator's fees, and delivers the individual award to the Class Representative.

Plaintiff hereby incorporates his Motions for Preliminary Approval filed on October 23, 2023 and revised and filed on November 8, 2023 for a more complete description of the procedural history.[2]

On November 22, 2021, Plaintiff William Burrows, Jr., filed his Class Action Complaint in the Superior Court of New Jersey, Essex vicinage, under the Docket No. ESX-L-8932-21. *See* Notice of Removal, Ex. A, ECF #1. On January 20, 2022, Defendants filed timely a Notice of Removal to remove the case to the District of New Jersey. ECF #1. On February 10, 2022, Defendants filed their Answer. ECF #4.

On February 16, 2023, the Parties jointly filed a status letter informing the court that they had reached a preliminary class action settlement and were working on drafting a comprehensive written settlement agreement. ECF #21.

On March 15, 2023, the Court entered a Letter Order granting a 60-day extension from the March 27, 2023, date for filing the motion for preliminary approval. ECF #26. On May 25, 2023, the Court entered a Letter Order granting a 60-day extension to July 25, 2023, for filing the motion for preliminary approval. ECF #29.

---

[2] After Plaintiff filed the October 23, 2023 motion, Defendants discovered an additional class member. This change necessitated Plaintiff to file a revised motion on November 8, 2023, with a revised Brief, proposed Class Notice, Declaration of Plaintiff's Counsel, and proposed Order.

On June 1, 2023, the Parties consented to and filed notice of the magistrate judge's authority to conduct all proceedings in the case include trial, the entry of final judgment, and all post-trial proceedings.  ECF #30.

The Parties continued to negotiate the terms of the Settlement and entered into the Class Action Settlement Agreement ("Settlement Agreement") on June 7, 2023. *See* December 7, 2023 Order Approving Notice, Ex. A, ECF #40. Pursuant to the Settlement Agreement, ¶50, the Parties filed a consent order Dismissing Defendant Joshua Gindin Without Prejudice on June 20, 2023. ECF #31. The Court dismissed Joshua Gindin on June 21, 2023. ECF #32.

On October 23, 2023, Plaintiff filed the motion for preliminary approval. ECF #37. Subsequent to the filing, Defendants notified Plaintiff that they had found an additional putative class member, revising the total the Settlement Class size from 51 to 52 members. The Parties amended the Settlement Agreement to account for the larger class size and larger class relief. *See* December 7, 2023 Order Approving Notice, Ex. B, ECF #40.

On November 8, 2023, pursuant to instructions from the Judge's law clerk, Plaintiff file a revised motion for preliminary approval, with an updated brief, settlement agreement, proposed class notice, declaration of plaintiff's counsel, and proposed order, ECF #39. On December 1, 2023, the Court conducted a telephonic hearing and granted Plaintiff's motion approving notice to the Settlement Class,

Appointing Interim Counsel, and Scheduling the Fairness Hearing on March 27, 2024. On December 7, 2024, the Court issued the Order for same, ECF #40.

On December 28, 2024, Atticus Administration, LLC ("Atticus" or the "Settlement Administrator"), the court-appointed settlement administrator, sent notice of the proposed Class Action Settlement ("Notice") to the 52 members of the Settlement Class via U.S. first-class mail. Ricci Decl., Ex. 1 (Bridley February 8, 2024 Declaration, ¶6). Of the 52 notices mailed, 50 were successfully sent, a 96.15% success rate. *Id.* ¶7. Neither Atticus nor Class Counsel received requests for exclusion from the class or objection to the settlement. *Id.* ¶8; Ricci Decl. ¶5.

On March 19, 2024, the Parties submitted a joint letter to the Court. ECF #42. Among other issues, the March 19, 2024 Letter informed the Court that Settlement Administrator had discovered the cost of using a bank that would not charge a fee for class members to cash their checks and had at least 20 branches in New Jersey was prohibitively expensive. The letter proposed a workaround to reimburse class members who were forced to pay a check-cashing fee. The Parties were also unable to agree on a proposed amount of attorney's fees and costs. The letter requested that the Court bifurcate final approval of the settlement class and a contested fee application. The Court granted same in a text order. ECF #43.

On March 25, 2024, Plaintiff filed his Motion for Final Approval of the Class Action Settlement. ECF #44. On March 26, 2024, Defendants filed for leave

to submit the CAFA Notices out of time. ECF #45. The Court then issued a text order on March 26, 2024 terminating the motion for final approval without prejudice and requiring Plaintiff to refile the motion after Defendants issued the CAFA Notice. ECF #46. On April 4, 2024, Defendants filed their Notice of Compliance with the Class Action Fairness Act. ECF #47.

On May 20, 2024, Defendants' counsel filed a Motion to Withdraw as Counsel of Record Without Substitution. ECF #48. On May 21, 2024, Defendants' counsel filed a Notice of Compliance with the Court's May 21, 2024, Order, which certified that Defendants' counsel emailed notice to Defendants. ECF #50.

On March 26, 2024, the Settlement Administrator has agreed to add $5.00 to each settlement check to cover any check cashing fees the members may incur. Ricci Decl. ¶17. This will provide a better benefit to class members because members will not need to submit any proof of their check cashing expenses to the Settlement Administrator. *Ibid.*

Regarding the award of attorney's fees and costs, the Parties notified the Court prior to the September 4, 2024 status conference of their inability to settle the amount of fees and costs they would propose that the Court grant. *See* ECF #56. During the status conference, the Court ordered that the Plaintiff shall file for Final Approval of the Class Action Settlement by September 30, 2024, with the award of attorney's fees and costs to be determined at a later date. ECF #57. The

Court also ordered the parties to mediate the issue of fees and costs. *Ibid.* On or about September 27, 2024, Defendants agreed to negotiate the fee award further, which resulted in the Parties requesting an additional 30 days to file the Motion for Final Approval to resolve the fee issue. *See* ECF #58. The Court granted the extension making October 30, 2024, the deadline for filing the Motion for Final Approval. ECF #59. However, Defendants were unable to provide full details of their settlement proposal, leaving the Parties without a fee settlement to propose to the Court. On October 30, 2024, Plaintiff filed his Motion for Final Approval and Seek Award of Attorney's Fees and Costs at a Later Date pursuant to the September 5, 2024 Order. *See* ECF #60.

Defendants and their attorneys continued to have communication problems. On November 19, 2024, Defendants' attorneys filed a second Motion to Withdraw as Counsel. *See* ECF #62. On December 30, 2024. The Court held a status conference with the Parties' attorneys, and Joshua Gindin, Esq., an officer of both Defendants. During the conference, the Parties satisfied the Court that the withdrawal of Defendants' attorneys will not prejudice Plaintiff or the Settlement Class. Additionally, Gindin agreed to escrow $75,000 with Class Counsel by January 13, 2025, to cover most of the settlement costs. On January 6, 2025, the Court entered the Order Granting Defendants' attorneys to Withdraw. *See* ECF #64. The Court also directed the Parties to mail a second class notice to advise the

Settlement Class Members of the new final approval date and that their right to object to their agreement as to the amount they would propose the Court award for attorney's fees and costs.

On January 27, 2025, Plaintiff filed a joint status letter for the January 30, 2025 settlement conference. *See* ECF #66. The letter informed the Court that the Parties agreed to a different payment schedule to fund the all the expenses of the settlement. Defendants agreed to escrow $80,000.00 in total, which would leave $66,362.50 as the proposed award for attorney's fees and costs.

On February 3, 2025, Plaintiff submitted the second notice mailing to the court for approval to mail. *See* ECF #74. On February 6, 2025, the Court entered an Order approving the class notice for mailing and scheduling the final fairness hearing for May 8, 2025. *See* ECF #75.

On February 23, 2025, Atticus sent the second notice (the "Second Notice") to the 52 Settlement Class Member to advise them of the May 8, 2025, final approval date and the proposed award of $66,362.50 for attorney's fees and expenses. *See* Bridley April 29, 2025, Decl. ¶4). Of the 52 notices mailed, 47 were successfully sent, a 90.38% success rate. *Id.* ¶5. Neither Atticus nor Class Counsel received objections to the proposed award for attorney's fees and expenses. *Id.* ¶6; Ricci Decl. ¶5.

On April 30, 2025, the Court issued a text order rescheduling the final fairness hearing for June 16, 2025 final approval date, and ordering a third notice to the class to notify them of the new date. *See* ECF #76. On April 30, 2025, Plaintiff submitted the third notice (the "Third Notice") for Court approval. *See* ECF #77. The Court approved the notice on May 6, 2025 by text order. *See* ECF #78. Atticus has mailed the Third Notice and will report back on the success rate of the mailing. Plaintiff will file a supplemental declaration with the results of the Third Notice mailing.

## III.    Summary of Relevant Facts and Plaintiff's Claims

Plaintiff hereby incorporates his Motions for Preliminary Approval filed on October 23, 2023 and revised and filed on November 8, 2023 for a fuller description of the facts and claims.

Plaintiff brings this action on behalf of himself and others similarly situated against Defendants for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") related to debt collection lawsuits filed by the law firm Abrahamsen Ginden, LLC, on behalf of DC Portfolio Services, LLC, a buyer of defaulted consumer debts. Plaintiff alleged Defendants violated the FDCPA by using false, deceptive, unfair, unconscionable, and misleading representations in connection with its debt collection lawsuits.  *See* Notice of Removal, Exhibit A, Complaint at ¶¶ 19-23, 29, ECF No. 1.

## IV.    SUMMARY OF THE TERMS OF THE SETTLEMENT

### A.    Definition of the Proposed Settlement Class

The Settlement Agreement, as amended on November 8, 2023, defines the

Settlement Class as:

> The 52 natural persons identified by Defendants, against whom, on or
> after November 22, 2020, Abrahamsen Gindin filed a lawsuit in New
> Jersey Superior Court on behalf of DC Portfolio Services where the
> complaint filed sought to collect an alleged debt incurred for personal,
> family or household purposes which was described as arising from a
> "personal loan" when the alleged debt arose from a different type of
> consumer financial obligation.

### B.    Benefits to the Settlement Class

Pursuant to the Court's Order and the Parties' agreement, Defendants have

escrowed all monies to be paid out, subject to final approval by the Court. See ECF

#64. Thus, Class Counsel will be issuing the below-described amounts from the

firm's attorney trust account.

### Payment of $69.14 to Each Settlement Class Member

Each Settlement Class Member was to receive a proportionate share of

$3,250.00. or $62.50 per person based on the initial class size. November 8, 2023

Addendum to Settlement Agreement. Since the Settlement Administrator

successfully mailed the Second Notice to 47 of the 52 members, each of the 47

remaining members will each receive a check for $69.14. Checks will be directly

mailed without any "claims made" process. If a check is returned, the Settlement

Administrator will attempt to find a current address.  Undeliverable or uncashed

checks will be paid as a *cy pres* award to Legal Services of Northwest Jersey, Inc.

Settlement Agreement at ¶9.

## Settlement Administration

Defendants will pay all costs and expenses associated with administering the

Settlement, including the Settlement Administrator's fees and costs. Since

Defendants have escrowed the funds with Class Counsel, no later than seven (7)

days following the Final Approval Date, Class Counsel shall make a payment to

the Settlement Administrator of the amount necessary to fund the relief to the

Settlement Class Members. Settlement Agreement at ¶31. No later than twenty-one

(21) days after the Final Approval Date, the Settlement Administrator shall mail

checks to all Settlement Class Members who did not successfully exclude

themselves from the Settlement. The Class Relief Checks ("Relief Checks") will

include the issue date and the expiration date in 16-point or greater font size. The

expiration date shall be 125 days from the date the Relief Check is mailed. If a

Relief Check is reissued or re-mailed to a Settlement Class Member, the new

Relief Check shall have an expiration date of the remaining 125 days or forty-five

(45) days from the date the Relief was re-issued, whichever date is longer. The

Relief Checks shall be accompanied by a cover letter from Class Counsel.

Settlement Agreement at ¶32.

The Settlement Administrator shall provide the Parties with one report of the number of Relief Checks cashed. The report shall be submitted to the Parties within thirty (30) days after the last Settlement Class Member Relief Check expiration date, and shall include a cumulative report of the number of checks cashed together with the names of the persons who either cashed or did not cash their respective check or if the check was undeliverable and the amount of the *cy pres* check. The final report shall also include verification and a detailed certification confirming that the requirements of this agreement have been complied with. Settlement Agreement at ¶33.

## Payment of a Service Award to Plaintiff

Subject to Court approval, the Defendants will pay a total award of $2,750.00 to Plaintiff (not including his class member check), comprised of a $1,750.00 in recognition of his efforts on behalf of the Settlement Class Members and $1,000 to settle his individual claims against all parties. Settlement Agreement at ¶10. The Service Award will be issued by Class Counsel from the firm's attorney trust account.

## Defendants Will Pay Class Counsel's Fees and Expenses

Subject to Court approval, Defendants will pay the reasonable attorney's fees and costs of Settlement Class Counsel. Settlement Agreement at ¶34. The Parties reached an agreement whereby Defendants would escrow $80,000.00 with Class Counsel to cover all relief and expenses of the litigation. After subtracting

the class relief, the individual award to the Class Representative, and the costs of

settlement administration, there will be a residual amount of $66,362.50 that the

Parties have agreed to propose to the Court for the award of attorney's fees and

expenses. Pursuant to the April 30, 2025, text order (ECF #76), Class Counsel will

file a separate motion an award of attorney's fees and expenses.

### C.    Release of Claims

In exchange for the benefits of the Settlement, the Settlement Class

Members will, upon Final Approval of the Settlement, release class claims asserted

in the Complaint. The Class agrees to the Release of Claims language as set forth

in the Settlement Agreement. The Release of Claims is as follows:

> As a result of the Settlement that has been approved in this matter,
> when this judgment becomes effective upon the Final Approval Date,
> Plaintiff and each Settlement Class Member, for themselves, their
> heirs, successors and assigns shall have jointly and severally remised,
> released, acquitted and forever discharged Defendants, including past
> and present partners, members, officers, directors, shareholders,
> employees, agents, heirs, successors and assigns of DC Portfolio
> Services, LLC, Abrahamsen Gindin, LLC, and/or Joshua Gindin of
> and from any and all actions, causes of action, suits, claims, defenses,
> covenants, controversies, agreements, promises, damages, judgments,
> demands, liabilities and obligations in law or in equity that Plaintiff
> and the Settlement Class Members, as defined herein, asserted or
> could have asserted as a result of, arising out of, or in connection with
> the practices described in the Complaint in this action as they relate to
> alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C.
> § 1692, *et seq.*, due to a lawsuit filed in New Jersey Superior Court by
> Defendant Abrahamsen Gindin, LLC on behalf of Defendant DC
> Portfolio Services, LLC where the complaint sought to collect an
> alleged debt incurred for personal, family, or household purposes

which was described as arising from a "personal loan" when the alleged debt arose from a different type of consumer financial obligation.

Settlement Agreement at ¶11.

## V.    Successful Implementation of the Court-Approved Notice Plan

In the December 7, 2023 Order, the Court found that the direct notice of the Settlement Class Notice in the manner set forth in the Settlement Agreement constituted the best notice practicable under the circumstances, pursuant to Rule 23(c)(2)(B). December 7, 2023 Order, ECF #40. The court-appointed Settlement Administrator, Atticus Administration, LLC ("Atticus"), processed the Settlement Class list through the National Change of Address database maintained by the United States Postal Service ("USPS") database that provides updated addresses for individuals who have moved. Bridley February 8, 2024, Decl. ¶5.

On December 5, 2019, Atticus mailed the Notice via United States Postal Service First-Class mail to all 52 Settlement Class Members.  Of the 52 Notices mailed, the Settlement Administrator determined 49 were initially delivered successfully. *Id.* ¶7. Atticus Administration located addresses of one of the Class Members that were initially undeliverable, and therefore successfully sent Notice to 50 of the 52 Class Members, or 96.15% of the Settlement Class. *Ibid.*

On February 23, 2025, Atticus sent the Second Notice to the 52 Settlement Class Member to advise them of the May 8, 2025, final approval date and the proposed award of $66,362.50 for attorney's fees and expenses. Ricci Dec. Ex. 2

(Bridley April 29, 2025, Decl. ¶4). Of the 52 notices mailed, 47 were successfully sent, a 90.38% success rate. *Id.* ¶5. Neither Atticus nor Class Counsel received objections to the proposed award for attorney's fees and expenses. *Id.* ¶6; Ricci Decl. ¶5.

The Federal Judicial Center has concluded that a notice plan that reaches at least 70% of the class is reasonable. Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide 3 (2010).*

## VI. No Settlement Class Member Objected to the Settlement or Requested Exclusion from the Class

To date, the Settlement Administrator and Class Counsel have received no objections and no requests for exclusion. Ricci Decl. ¶5; Bridley February 8, 2024, Decl. ¶8. To date, the Settlement Administrator and Class Counsel have not received any objections to the proposed $66,362.50 award for attorney's fees and costs. Bridley April 29, 2025, Decl. ¶4; Ricci Decl. ¶5.

## VII. Legal Argument

### A. The Settlement Satisfies Rule 23(e)(2)

Plaintiff and his counsel have adequately represented the proposed Settlement Class pursuant to Rule 23(e)(2)(A). The Third Circuit has consistently ruled that the measure of adequate representation is dependent upon two factors:

> (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class.

Page 16

*Weiss v. York Hosp.*, 745 F.2d at 811, (*quoting Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). In determining the adequacy under Rule 23(a)(4), "[t]he burden is on the defendant to demonstrate that the representation will be inadequate." *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

The Third Circuit long has held that the "adequacy-of-representation test is not concerned whether plaintiff personally derived the information pleaded in the complaint or whether he will personally be able to assist his counsel." *Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir. 1982).  Plaintiff readily satisfies these standards. He has no conflicting interests and hers and the Settlement Class's claims are based on the same statutory liability theories applied to the same conduct.

Plaintiff's interest is coextensive with the interest of the other members of the class as he and his attorneys "will competently, responsibly and vigorously prosecute the suit, and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977); Ricci Decl. ¶¶6-9. To satisfy the requirement of coextensive interests, the named plaintiff and putative class members should "share common objectives and legal or factual positions" without "'antagonistic' interests between the representatives and the class." *Gallano v. Running*, 139 N.J. Super. 239, 246

(Ch. Div. 1976) (citing 7A Wright & Miller, Federal Practice and Procedure § 1769). Plaintiff has no interests antagonistic to the class. Ricci Decl. ¶6.

As shown with respect to typicality, Plaintiff is an adequate Settlement Class representative because he does not have antagonistic interests as his claims are predicated upon the same legal and factual allegations. Plaintiff's counsel, who presently serves as Class Counsel, is highly experienced in consumer class actions and other complex litigation and thus is able to effectively prosecute his and the class claims.  Ricci Decl. ¶¶12-16, Ex. B. Plaintiff has and will fairly and adequately represent and protect the interests of the Settlement Class.

Class Counsel has adequate resources committed to representing the Settlement Class. These resources include sufficient support staff experienced in communicating with class members, multiple phone lines for communications or questions from class members, and experience in successfully completing class settlements.  Ricci Decl. ¶¶8-9.

Class Counsel is knowledgeable and experienced in this area of law as well as class actions generally.  Counsel has concentrated its practice in the area of consumer law. Ricci Decl. ¶¶12-16, Ex. B.   Plaintiff's attorney has been certified as Class Counsel in twelve class actions, not including this case.  Ricci Decl. ¶16.

The Court had appointed Plaintiff's counsel, David Ricci, from The Law Office of David C. Ricci LLC, as Interim Counsel pursuant to Fed. R. Civ. P.

23(g)(3). Given his work in the action, his extensive knowledge of the applicable law, and the resources that he has and will continue to commit, Interim Class Counsel merit appointment as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## The Costs, Risks, and Delay of Trial and Appeal

This factor is discussed in the application of the Girsh Factors discussed below.

## Effectiveness of the Proposed Method of Distributing Relief

Settlement Class Members will be directly mailed checks without any "claims made" process. If a class member has to pay a fee to cash the check at a bank, the Settlement Administrator will reimburse the fee when presented with a receipt for the cost. *See* March 19, 2024 Letter to the Court, ECF #42, and March 22, 2024 Text Order. ECF #43. If a check is returned as undeliverable, the Settlement Administrator will attempt to find a current address.  If a check is uncashed prior to expiration, a second check will be issued. Unclaimed funds will be paid to Legal Services of Northwest Jersey, Inc.[3] as a *cy pres* award.

## The Terms of any Proposed Award of Attorney's Fees

This factor is discussed in the Application of the Girsh Factors discussed below. As instructed by the Court, Class Counsel will file a separate motion for the award of attorney's fees and costs.

---

[3]  Legal Services of Northwest Jersey, Inc. provides free legal assistance to low-income New Jersey residents in Somerset, Hunterdon, and Warren counties.

## No Other Agreements Made in Connection with the Proposal

The executed Settlement Agreement with addendum and Defendants' agreement to pay attorney's fees and costs subject to that agreement are the only agreements made in connection with the proposal. There are no other agreements made in connection with the proposal.

## The Settlement Treats Members Equitably Relative to Each Other

As noted above, each Settlement Class Member will receive a proportionate share of $3,250.00.

### B.    The Settlement Class Satisfies Rule 23(a)

Plaintiff has satisfied each of the four threshold requirements of Rule 23(a) which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998); *Prudential II*, 148 F.3d at 308-09. Here, all four elements are satisfied.

Although it is not among Rule 23(a)'s expressly enumerated requirements, the Third Circuit, this Court, and others have held that "an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class

must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012). Since the Class is defined based upon objective criteria that are identifiable on the face of the Defendants' collection lawsuits, their membership is readily ascertainable.

### 1.    The Settlement Class is Sufficiently Numerous

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Although there is no bright-line threshold, the Third Circuit has found that a class of forty has been presumed to be numerous. *See, e.g., Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("generally if the named plaintiff demonstrates that the potential number of Plaintiff exceeds 40, the first prong of Rule 23(a) has been met"); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed at level of forty class members) (*citing* 1 NEWBERG ON CLASS ACTIONS 2D, (1985 Ed.) § 3.05).

The Settlement Class is comprised of 47 persons. This figure exceeds the threshold for establishing numerosity.

### 2.    The Claims of the Settlement Class Raise Common Questions of Law and Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." To satisfy Rule 23(a)(2), a certifiable class-wide claim "must depend upon a common contention," and that "[w]hat matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a class

wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

The Supreme Court and the Third Circuit have long recognized that even one common question (so defined) may demonstrate commonality. *Id.* at 2556 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do . . .").

"Commonality" under Rule 23(a)(2) does not require identical claims, and "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal*, 43 F.3d at 56. Instead, "[c]ommonality exists when proposed class members challenge the same conduct of the defendants." *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446-47 (E.D. Pa. 2000).

"Common nuclei of fact are typically manifest where…defendants have engaged in standardized conduct towards members of the proposed class by mailing them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Several federal courts have held that the commonality requirement was satisfied based on the receipt of a form collection letter that violated the FDCPA. The common nucleus of operative fact is Defendants' practice of filing collection lawsuits that mischaracterized the Class

Members' alleged debts to be "personal loans" when they were allegedly a different type of alleged debt. *See* Complaint ¶¶21-26, ECF #1, Ex. A.

Plaintiff's and Settlement Class members' claims raise a common question: Whether the Defendants' collection lawsuits violated the FDCPA because they mischaracterized the status of the alleged debt. *Id.*, ¶52. These common questions of law and/or fact have common Class-wide answers that would determine or drive the resolution of Plaintiff's and proposed Settlement Class claims, and therefore readily satisfy Rule 23(a)(2)'s requirements.

### 3.   Plaintiff's Claims are Typical

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). The "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential II*, 148 F.3d at 311 (citations omitted). Rule 23(a)(3) is satisfied where a named plaintiff can "show that the issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss v. York Hosp.*, 745 F.2d at 809 n.36 (citation omitted).

There was nothing unique about Defendants' collection efforts with regard to Plaintiff. Ricci Decl. ¶11. Plaintiff's claims thus are typical of those of the Settlement Class.

### 4.    Plaintiff and Class Counsel Will Adequately Represent the Settlement Class

The subject of adequacy is discussed above.

### 5.    The Settlement Class Satisfies Rule 23(b)(3)

Plaintiff seeks certification of a class under Rule 23(b)(3) for settlement purposes only. The requirements for certifying a Settlement Class under (b)(3) are lessened compared to a litigation class. Since a settlement would eliminate the need for a trial, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Rule 23(b)(3) requires that Court find that:

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

The predominance inquiry examines "whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *In re Community Bank of N. Va.*, 418 F.3d 277, 307-308 (3d Cir.2005) (*citing Amchem*, 521 U.S. at 623-24).

Rule 23(b)(3)'s "superiority" requirement asks the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004) (citation omitted). In determining superiority, a court may consider the following factors: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

A class action is superior to any other method of proceeding where "there are a potentially large number of class members" with "little interest in 'individually controlling the prosecution or defense of separate actions,' Fed. R. Civ. P. 23(b)(3)(A), because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit." *Warfarin Sodium, supra*, at 534.

As discussed above, the claims brought by Plaintiff are identical to those of the Settlement Class, in that they all involve alleged FDCPA violations arising out of Defendants' alleged unfair debt collection tactics. As such, common questions of law and fact predominate. Superiority is also satisfied as the proposed settlement will provide prompt, predictable, and certain relief, whereas individual litigation would provide no guarantee of relief at all. In addition, it is likely that many Settlement Class members are unaware that they have claims. This Settlement therefore likely represents the only chance for many Settlement Class members to receive any relief at all for these claims.

### C.    Application of the Girsh Factors to the Settlement

The Third Circuit has identified nine factors - the *Girsh* factors - that a district court should consider when determining whether a proposed class action settlement warrants approval. *In re Datatec Systems*, 2007 WL 4225828, *2 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). These include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

The Settlement before the Court in this case satisfies these factors, and, therefore, final approval should be granted.

### 1.    Complexity, Expense and Likely Duration of the Litigation

"The first *Girsh* factor 'captures the probable costs, in both time and money of continued litigation.'" *Sullivan*, 667 F.3d at 320 (*quoting In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004)). There would be significant expense and delay if this litigation were to proceed. The claims would continue to be litigated in Court with virtually no chance of achieving a better result than was obtained in the settlement.

This matter has been litigated for three and a half years. The parties engaged in discovery that included document demands and interrogatories. Ricci Decl. ¶8.

Had the matter not settled, there likely would have been dispositive motions, followed by trial on any remaining issues.  In addition, any judgment could be appealed, thereby further extending the duration of this litigation. Continued litigation would require significant judicial resources and burden the parties, causing them to expend additional time and expenses.  The proposed settlement, on the other hand, removes risk and provides immediate and certain benefits to the Settlement Class.

### 2.  The Reaction of the Class to the Settlement

"The second *Girsh* factor 'attempts to gauge whether members of the class support the settlement,' by considering the number of objectors and opt-outs and the substance of any objections." *Sullivan*, 667 F.3d at 321 (*quoting Prudential*, 148 F.3d at 318). To date, no members have objected to the settlement or excluded themselves from the. Ricci Decl. ¶4; Bridley February 8, 2024, Decl. ¶8; Bridley April 29, 2025 Decl. ¶6.

### 3.  Stage of the Proceedings and the Amount of Discovery Completed

"The third *Girsh* factor 'captures the degree of case development that class counsel had accomplished prior to settlement,' and allows the court to 'determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Sullivan*, 667 F.3d at 321 (citations omitted).  Essentially, the Court must ensure that the Settlement is not the product of a quick and uninformed decision-making process.

The parties conducted significant discovery including Defendants producing confidential class worth information and the lawsuits filed against the Settlement Class Members. Ricci Decl. ¶8. The settlement was achieved only through extensive and numerous negotiations between the parties through counsel.  Ricci Decl. ¶7.  Thus, this factor likewise weighs in favor of approval.

### 4.  Risks of Establishing Liability

The fourth *Girsh* factor "examine[s] what the potential rewards (or

downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them.'" *Sullivan*, 667 F.3d at 322 (quotation omitted).

When evaluating settlement benefits versus the potential award at a trial, the Third Circuit has instructed that the settlement fairness factors must be judged "against the realistic, rather than theoretical, potential for recovery after trial." *Sullivan*, 667 F.3d at 323 (quotation omitted).  As the Court is aware, the Defendants have denied any violation of the FDCPA and maintained that their actions were appropriate at all relevant times. If Plaintiff were to reject the settlement reached, in favor of continued litigation, then he might have lost on the merits.  As risks are inherent in any litigation, it is also possible that a fact-finder would not rule in favor of the Plaintiff.

While Class Counsel believes the class claims are meritorious, counsel is experienced and realistic, and understands that the resolution of liability issues, trial, and the inevitable appeal process are inherently uncertain in terms of both outcome and duration. Thus, this factor also weighs in favor of approval.

### 5.    The Risk of Establishing Damages

"As with the fourth *Girsh* factor, 'this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *Sullivan*, 667 F.3d at 522 (quotation omitted).  The Court must determine whether the proposed settlement is within a range that experienced attorneys could accept

in light of the relevant risks of the litigation. *GM Truck*, 55 F.3d 768, 806 (3d Cir. 1995).

Here, Plaintiff's class claims were for statutory damages under the FDCPA—limited by statute to 1% of Defendants' net worth. 15 U.S.C. § 1692k(a)(2)(B). As noted above, the $3,250.00 recovery exceeds the maximum allowable recovery in a class action settlement under the FDCPA based on the confidential net worth information produced by Defendants. Ricci Decl. ¶10. Accordingly, this factor weighs heavily in favor of the settlement.

### 6. Risk of Maintaining the Class Action Through the Trial

"The sixth *Girsh* factor 'measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial' in light of the fact that 'the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action.'" *Sullivan*, 667 F.3d at 322 (quotations omitted, 391 F.3d at 537). After the Supreme Court's opinion in *Amchem*, 521 U.S. 591 (1997), this factor "may not be significant to a court's determination of the approval of a settlement." *Prudential*, 148 F.3d at 321. Particularly because this is a settlement class, "[T]his factor adds little to the consideration of the fairness of the settlement." *In re Safety Components Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 91 (D.N.J. 2001).

As discussed above, this litigation carried significant risks. If the Plaintiff rejected settlement, he might have lost on the merits.  This risk weighs toward settlement.

### 7.    Ability of the Defendants to Withstand Greater Judgment

The seventh *Girsh* factor considers "'whether the defendants could withstand a judgment for an amount significantly greater than the settlement.'" *Sullivan,* 667 F.3d at 323 (*quoting Cendant*, 264 F.3d at 240). The Third Circuit has noted that this fact alone does not weigh against settlement approval. *See, e.g., Warfarin, supra*, 391 F.3d at 538. Where no issue is raised as to whether a defendant can afford larger judgment, this is a neutral factor, weighing neither in favor of nor against the approval of the settlement. *See In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.,* 263 F.R.D. 226, 242 (E.D. Pa. 2009).

As noted above, the maximum allowable recovery in a class action under the FDCPA in this matter is 1% of Defendants net worth. 15 U.S.C. § 1692k(a)(2)(B). The $3,250.00 of class relief exceeds the maximum recovery that Plaintiff could have achieved at trial. Ricci Decl. ¶10. This factor does not weigh against settlement.

### 8.    Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

"The final two *Girsh* factors consider 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *Sullivan*, 667 F.3d

at 323 (*quoting Warfarin*, 391 F.3d at 538).  "The reasonableness of a proposed

settlement is assessed by comparing 'the present value of the damages plaintiffs

would likely recover if successful [at trial], appropriately discounted for the risk of

not prevailing … with the amount of the proposed settlement.'"  *Id.* at 323-24

(*quoting Prudential*, 148 F.3d at 322).  The fairness of the settlement process and

of the Settlement Agreement itself also was shaped by the experience and

reputation of counsel, an important factor in final approval of class action

settlements. *See GM Truck*, 55 F.3d at 787-88.

The settlement was not the product of collusive dealings, but rather was the

result of extensive arm's-length negotiations by counsel for the parties.  Ricci

Decl. ¶7.  Furthermore, continued litigation would be long, complex and

expensive, and a burden to court dockets. *Lake v. First Nationwide Bank*, 900 F.

Supp. 726, 732 (E.D. Pa. 1995) (expense and duration of litigation are factors to be

considered in evaluating the reasonableness of a settlement).

The Settlement Agreement was the result of many months of good faith,

arm's-length negotiations. Ricci Decl. ¶7.  The Settlement does not unduly grant

preferential treatment to any segment of the Settlement Class.  Class Counsel did

not begin to negotiate the issue of attorney's fees until after a settlement agreement

had been executed by the Parties. Ricci Decl. ¶6-7.

**D.    The Award to the Named Plaintiff Is Appropriate and Merits Approval**

Service award payments to named class representatives are commonly approved by courts in class action settlements. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases. Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class.") (internal citations omitted); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005) (reviewing cases in which Courts approved service awards in settlement to named class action plaintiffs).

In approving a service award to named class action plaintiffs, the New Jersey Appellate Division in *Machulsky v. Lilliston Ford*, 2008 WL 2788073, No. A-2987-06T5 (App. Div. July 21, 2008), conducted a thorough review of applicable federal case law and found that "[i]ncentive awards to class representatives in class actions are a recognized element of agreements to resolve class actions." *Id.* at *2-3 (*citing In Re Compact Disc Minimum Advertised Price Antitrust Litigation*, 292 F. Supp. 2d 184, 189 (D. Me. 2003); *Lachance v. Harrington*, 965 F. Supp. 630, 652 (E.D. Pa. 1997); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001). The *Machulsky* court restated the factors

commonly considered by courts when determining whether to approve a service

award to class action plaintiffs:

> 1) the risk to the class representative in commencing suit, both
> financial and otherwise;
> 2) the notoriety and personal difficulties encountered by the
> class representative;
> 3) the amount of time and effort spent by the class
> representative;
> 4) the duration of the litigation; and
> 5) the personal benefit (or lack thereof) enjoyed by the class
> representative as a result of the litigation.

*Id.* at *3 (*quoting Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D.

Cal. 1995)).  Among other "valid reasons" for approving awards to the class

representative, the *Machulsky* court noted that "the public policy favoring private

civil litigation as a means to promote certain important social values often fails to

provide adequate compensation or incentive for plaintiffs to take on this burden

simply on principle."  *Id.* at *3 (*quoting* Clinton A. Krislov, Scrutiny of the

Bounty: Incentive Awards for Plaintiffs in Class Litigation, 78 Ill. B.J. 286

(1990)).

One organization has described the purpose behind service award payments

to named class action plaintiffs as follows:

> Awards to named plaintiffs are appropriate in recognition of
> their willingness to undertake the representation of class
> members. Consumers who represent an entire class should be
> compensated reasonably when their efforts are successful and
> compensation would not present a conflict of interest. The

amount that is reasonable depends on the circumstances of the case…

National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, Guideline 5, paragraph C (2014).

While not all courts have uniformly approved of incentive payments, it is clear that "whether to grant incentive awards is entirely within the trial court's discretion." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000), *cert. denied*, 532 U.S. 1038, 121 S. Ct. 2000, 149 L. Ed. 2d 1003 (2001). There is "ample authority in this and other circuits for the approval of incentive awards." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005) (collecting cases). "Like the attorneys in this case, the class representatives here have conferred benefits on all other class members and they deserve to be compensated accordingly." *Id.* at 258 (*quoting In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, at *56 (E.D. Pa. June 2, 2004).

Here, as in other cases where incentive awards have been permitted, the named Plaintiff took action which "protected the interests of the Class Members and which have resulted in a Settlement that provides substantial economic and non-economic benefits for the Class Members." *Enter. Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 251 (S.D. Ohio 1991). Plaintiff participated in the drafting of the pleadings and the litigation process.

It is highly unlikely that this litigation would have continued for as long as it has if the case proceeded as an individual claim. Plaintiff forestalled relief on his individual claims in order to ensure that relief was provided to the settlement class. If this settlement is not approved and the matter is eventually litigated, Plaintiff would need to participate in further discovery and testify at trial if necessary. In addition, while Plaintiff brought claims under the FDCPA, he has obtained benefits beyond what could have been obtained under that statute.

The subject matter of this case is about the Defendants' efforts to collect consumer debts. Plaintiff's name is associated with this case in both the Court's records and in the notice to the settlement class. This type of notoriety is not too dissimilar to the named Plaintiffs in *Haas v. Burlington Cty.*, No. CV 08-1102 (NLH/JS), 2019 WL 413530, at *5 n.4 (D.N.J. Jan. 31, 2019). In that case the settlement provided for incentive awards of $50,000 and $30,000 for the two named plaintiffs, in a case involving civil rights claims related to strip-searching conducted at county correctional facilities. The settlement provided for up to $400 per class member. In approving the awards as reasonable over an objection as to the lack of proportionality with the recovery of individual class members, the court noted that, as here, the awards did not reduce the compensation available to the other class members. *Haas* at 11.

The Settlement Agreement provides that Defendant will pay Plaintiff
$2,750.00; $1,000.00 to settle his individual FDCPA claims with Defendants and
$1,750.00 as a service award in recognition of his efforts on behalf of the
Settlement Class. Settlement Agreement at ¶10. The $1,750 service award to
Plaintiff is well within the range of incentive awards approved by Court in Class
Actions.  *See In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 285 (3d Cir.2009)
(finding that the court did not err in granting final approval of a settlement that
included $150,000 in incentive awards distributed between fifteen named
plaintiffs); *Bogosian v. Gulf Oil Corp.,* 621 F.Supp. 27, 32 (E.D.Pa.1985) (granting
incentive awards of $20,000 to each class representative).; *Dewey v. Volkswagen of
Am.,* 728 F. Supp. 2d 546, 577-78 (D.N.J. 2010), *rev'd and remanded on other
grounds Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012)
(approving incentive awards of $10,000 each to nine named Plaintiffs when the
awards were agreed to and did not diminish the class recovery); *Varacello v. Mass.
Mut. Life Ins. Co*., 226 F.R.D. 207, 258–29 (D.N.J.2005) (incentive awards ranging
from $1,000 to $10,000); *Hegab v. Family Dollar Stores, Inc.*, No. 11-cv-01206,
2015 WL 1021130, at *16 (D.N.J. Mar. 9, 2015) (named plaintiff received a
$7,500 enhancement award); *Gunthert v. Bankers Standard Insurance Company*,
No. 5:16-CV-00021, 2019 WL 1103408, at *7 (M.D. Ga. Mar. 8, 2019) (finding
that a $10,000 service award fair and reasonable); P. Notice of Mot. And Mot. for

an Order Granting Final Approval of Class Action Settlement, Ex. B at *2, *Javier*

*Camacho v. Southwest Harvesting, Inc.*, 16-CV-05744-LHK (N.D. Cal. Jan. 18,

2018) (granting a $7,500 service award); Fin. Order and J., 7, *Marcum and Lewis*

*et al. v. Dolgen Corp. Inc.,* No.: 3:12cv108, (E.D. Va. Mar. 4, 2015) (granting two

$10,000 incentive awards); *Brulee v. DAL Global Serv., LLC*, 2018 WL 6616659

at *2, (C.D. Cal. Dec. 13, 2018) ($10,000 service award to each named plaintiff);

Order Grant. Mot. for Prelim. Approval, 13, *Champagne v. Plannernet, Inc.*, No.:

17-cv-02128-SK (N.D. Cal. Apr. 22, 2019).

A comprehensive academic study of class action incentive awards conducted

in 2006 found that the average award was $15,991.54. Eisenberg & Miller,

*Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L.

REV. 1303, 1321 (2006).

## VIII.  Award of Attorney's Fees to Class Counsel

Reasonable attorney's fees and costs are required by the FDCPA.  15 *U.S.C.*

§1692k(a)(3) ("in the case of any successful action to enforce the foregoing

liability, the costs of the action together with a reasonable attorney's fee as

determined by the court.").  In the Settlement Agreement, Defendants agreed to

pay Class Counsel's reasonable attorneys' fees and costs, subject to court approval.

*See* December 7, 2023 Order approving class notice, Ex. A (Settlement Agreement,

¶34). ECF #40. The Settlement Agreement further provided that if the Parties

could not agree to the amount of fees and costs to submit to the Court for approval, Class counsel would file an initial fee application prior to the final approval date and supplemental fee application(s) for fees and costs incurred after the filing of the initial fee application. *Ibid.* The Parties did not agree on the amount to propose to the Court for attorney's fees and costs until long after the settlement was reached and the initial class notice mailed. As a result, the Court ordered the Second Notice to be mailed to the Settlement Class informing them of the $66,362.50 proposed award for Class Counsel. *See* ECF #75; Ricci Decl. ¶4. The class was informed of the nature of the request and the amount to be paid in the mailed notice. *See* Bridley April 29, 2025 Decl., Ex. A.

As detailed in the Procedural History section, the Parties were finally able to settle the amount of fees and costs to propose to the Court. Class Counsel shall file a separate motion for an award of fees and costs. *See* ECF #76.

## IX.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval to the Class Action Settlement, grant Class Counsel leave to seek an award of attorneys' fees and costs at a later date, and enter the proposed form of Order.

Dated: May 9, 2025                         By:  *s/David C. Ricci, Esq.*
                                                      David C. Ricci