## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **WILLIAM BURROWS, JR.,** *on behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>**DC PORTFOLIO SERVICES, LLC and ABRAHAMSEN GINDEN, LLC,**<br><br>Defendants. | Case No. 2:22-cv-260 (SDA)<br><br>**OPINION ON MOTION FOR FINAL APPROVAL (ECF NO. 79) AND MOTION FOR ATTORNEY'S FEES (ECF NO. 80)**<br><br>Hon. Stacey D. Adams, U.S.M.J.<br><br>August 11, 2025 |

**STACEY D. ADAMS, United States Magistrate Judge**

This matter comes before the Court on two motions: (1) Motion for Final Approval of Class Action Settlement (ECF No. 79); and (2) Motion for Attorney's Fees and Expenses (ECF No. 80) filed by Plaintiff William Burrows ("Plaintiff"), on behalf of himself and those similarly situated. Defendants DC Portfolio Services, LLC ("DC") and Abrahamsen Ginden, LLC ("AG Law") (together, "Defendants") do not oppose the Motions. The Court held a final fairness hearing on June 16, 2025. For the foregoing reasons, the Motions are **GRANTED**.

## FACTUAL BACKGROUND/RELEVANT PROCEDURAL HISTORY[1]

Plaintiff brings this action on behalf of himself and those similarly situated for damages arising from Defendants' alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA")[2] and the New Jersey Consumer Fraud Act, N. J. Stat. Ann. § 56:8-1, *et*

---

[1] The following facts are gleaned from Plaintiffs' Complaint. (Compl., ECF No. 1-1).

[2] The FDCPA is a remedial statute "geared towards eliminating abusive practices by debt collectors, creates a private right of action against debt collectors who violate its provisions." *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.* 898 F.3d 351, 358 (3d Cir. 2018). "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt

*seq.* ("NJCFA").[3] DC is a buyer of defaulted debts. (Compl. ¶ 5). AG Law is a collection law firm. (*Id.* ¶ 6). Formerly named Defendant Joshua Gindin is a principal of AG Law. (*Id.* ¶ 7).[4]

Defendants are in the business of collecting past-due and defaulted debts or alleged debts of natural persons. (*Id.* ¶ 11). They regularly attempt to collect past-due and defaulted debts allegedly owed to others which were incurred primarily for personal, family, or household purposes, and therefore covered by the FDCPA. (*Id.* ¶ 10). However, Defendants are not in the business of extending credit or selling good/services to consumers. (*Id.* ¶ 9). DC uses AG Law to file collection lawsuits against consumers. (*Id.* ¶¶ 13-16).

On or about June 14, 2021, AG Law filed a collection lawsuit against Plaintiff to collect an alleged debt that was primarily for personal, family, or household purposes. (*Id.* ¶ 17). AG Law has filed similar collection lawsuits throughout New Jersey. (*Id.* ¶ 20). Plaintiff alleges he and other consumers were harmed by Defendants' violations of the FDCPA because the collection lawsuits misidentify the debt owed as a "personal loan" rather than credit card debt, confusing and

---

collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). The FDCPA defines a debt as "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

[3] The NJCFA prohibits the use of "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid." N.J. Stat. Ann. § 56:8-2. To succeed on a claim under the NJCFA, a plaintiff must show "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bonnieview Homeowners Ass'n v. Woodmont Builders L.L.C.*, 655 F. Supp. 2d 473, 503 (D.N.J. 2009) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)).

[4] Joshua Gindin was dismissed from the matter without prejudice via a consent order signed on June 21, 2023. (ECF No. 32).

misleading consumers because they would not know the kind of alleged debt at issue. (*Id.* ¶¶ 23-26).

This matter was removed to the District of New Jersey from the New Jersey Superior Court, Essex County on January 20, 2022. (ECF No. 1). Defendants filed their respective Answers to the Complaint on February 10, 2022. (ECF Nos. 4-6). An initial scheduling order was entered on March 30, 2022. (ECF No. 11). The matter was referred to mediation with Hon. Joseph A. Dickson, Ret. on December 9, 2022. (ECF No. 19). On February 16, 2023, the parties reported to the Court that they reached a preliminary class settlement. (ECF No. 21). This matter was assigned to the Magistrate Judge for case disposition, by consent, on June 21, 2023. (ECF No. 30).

Plaintiff filed a Motion for Preliminary Approval of the Class action on October 23, 2023. (ECF No. 37).[5] Judge Kiel granted preliminary approval on December 7, 2023. (Preliminary Approval Order, ECF No. 40). That order appointed David C. Ricci, Esq. as interim counsel. (*Id.* ¶ 37). It appointed Atticus Administration, LLC ("Atticus") as the Settlement Administrator. (*Id.* ¶ 25). It scheduled the final fairness hearing for March 27, 2024. (*Id.* ¶ 35).

Plaintiff did not file their motion for final approval until March 25, 2024, two days before the final fairness hearing. (ECF No. 44). Further, Defendants filed a motion for leave to submit Class Action Fairness Act ("CAFA") notices out of time on March 26, 2024, one day before the final fairness hearing. (ECF No. 45). This left then-Magistrate Judge Edward S. Kiel no choice but to cancel the final fairness hearing, as the Court did not have sufficient time to prepare for it. (ECF No. 46). That order required the parties to submit the CAFA notices and refile the motion for final approval when all requirements were met. (*Id.*).

---

[5] Improperly filed as "First MOTION to Certify Class."

Defense counsel filed their first motion to withdraw on May 20, 2024. (ECF No. 48). Magistrate Judge Cathy L. Waldor held a status conference on June 3, 2024 to discuss that motion. (ECF No. 49). On June 24, 2024, defense counsel submitted a letter that they reconciled with Defendants and withdrew the motion. (ECF No. 53). The motion was therefore denied as moot. (ECF No. 54).

This matter was transferred to the undersigned on July 11, 2024. On September 4, 2025, the Court held a status conference. (ECF No. 55). There, the Court was made aware that, although the parties had resolved the underlying claims, they had yet to settle the issue of attorney's fees. The parties were directed to attend mediation, again, with Judge Dickson to address this issue. (ECF No. 57). On October 30, 2024, Plaintiff filed a renewed motion for final approval. (ECF No. 60).

On November 17, 2024, counsel for Defendants filed a second motion to withdraw. (ECF No. 62). The Court held a status conference on December 30, 2024 to discuss the motion to withdraw and the final approval motion. (ECF No. 63). There, the Court granted the Motion to withdraw. (ECF No. 64 ¶ 1). The parties also agreed that Defendants would place $75,000 in escrow to be used to fund the settlement and cover anticipated counsel fees and costs. (*Id.* ¶ 5). Plaintiff withdrew the Motion for Final Approval, subject to refiling at a later date. (ECF No. 71).

The undersigned scheduled this matter for a final fairness hearing on May 8, 2025. (ECF No. 73 ¶ 3). However, once again, Plaintiff failed to file a timely motion for final approval and the hearing had to be postponed until June 16, 2025. (ECF No. 76). Plaintiff filed the instant motions on May 9, 2025. (ECF Nos. 79-80). Both motions are unopposed.

## THE PROPOSED SETTLEMENT

The Settlement Class is defined as:

> The 52 natural persons identified by Defendants, against whom, on or after November 22, 2020, [AG Law] filed a lawsuit in New Jersey Superior Court on behalf of DC Portfolio Services where the complaint filed sought to collect an alleged debt incurred for personal, family or household purposes which was described as arising from a "personal loan" when the alleged debt arose from a different type of consumer financial obligation.

(Settlement Agreement Addendum, ECF No. 39-3 at 1).[6]

The Settlement provides that Defendants will pay the amount of $3,250 to be distributed by Atticus to Settlement Class Members who do not exclude themselves. (*Id.*). If all 52 class members choose to remain in the class, each member will receive a check for $62.50. (*Id.*). If any members exclude themselves, each of the remaining class members shall receive a *pro rata* increase of their award. (*Id.*). If a check is not deliverable to a member of the settlement class or is not cashed prior to its expiration date, Defendants shall make a *cy pres* payment for the total amount of all checks not cashed to Legal Services of Northwest Jersey, Inc. ("LSNJ"), with no restrictions on its use. (Settlement Agreement ¶ 9). Atticus' fee for administering the settlement is $7,300. (Bridley Decl. #1, ECF No. 79-2, Ex. 1 ¶ 9).

The Settlement Agreement and Addendum provides that "[i]n the event that Settlement Class members *choose to exclude themselves from the Settlement Class*, each of the remaining members shall receive a pro-rata increase to their awards." (Settlement Agreement Addendum at

---

[6] The Settlement Agreement is comprised of two documents: "Settlement Agreement" (ECF No. 39-2, Ex. 2) and "Settlement Agreement Addendum" (ECF No. 39-3). The Settlement Agreement Addendum modifies ¶¶ 3, 5, 8 in the Settlement Agreement, because counsel discovered an additional class member after the Motion for Preliminary Approval was filed. (ECF No. 39); *see also* (Preliminary Approval Tr., ECF No. 41 at 4:7-11).

1). Because there were no requests for exclusion, each of the 52 class members will receive $62.50.[7]

### Notice of the Settlement

Notice of the Settlement was handled by Atticus, a class action and claims administration firm. Notice was sent to the Attorney General of the United States and the Attorney General of New Jersey on March 27, 2024, pursuant to CAFA. (ECF No. 47).

### First Set of Notices

On October 23, 2023, Atticus received a data file from class counsel containing the names, addresses, and collection information for the 52 individuals in the class. (Bridley Decl. #1 ¶ 4). The list was processed through the National Change of Address database maintained by the United States Postal Service ("USPS"). On December 28, 2023, Atticus sent notice of the proposed class action settlement via U.S. First-Class Mail. Of the 52 notices mailed, three were returned as undeliverable without forwarding information and were sent to a professional service for address tracing. (*Id.* ¶ 7). New address information was obtained for one undeliverable record. (*Id.*). Therefore, 50 out of 52 notices from the first mailing were successfully delivered. (*Id.*). The notice

---

[7] Plaintiff's moving brief erroneously states that any payments not claimed due to lack of notice will be split on a *pro rata* basis between participating class members. (Final Approval Br., ECF No. 79 at 2). This is inconsistent with the language of the Settlement Agreement, which provides that participating members will receive a *pro rata* share only of those who actually *exclude* themselves from the settlement. (Settlement Agreement Addendum at 1). The Settlement Agreement nor the Addendum contemplate members receiving a higher dollar amount for those members whom did not receive notice. Because there were no requests for exclusion, the proper disbursement amount is $62.50 per class members. *See Trist v. First Fed. Sav. & Loan Ass'n of Chester*, 89 F.R.D. 1, 2 (E.D. Pa. 1980) (denying request to exclude class members who did not receive notice of settlement of class action because actual notice was not required to notify them of settlement). Any amounts not claimed due to lack of notice will result in a *cy pres* award to LSNJ. The court will modify the final approval order to reflect same.

required that class members postmark any request for exclusion by February 1, 2024. (*Id.* ¶ 8). Atticus did not receive any requests for exclusion.

### Second Set of Notices

A second round of notices was required to be sent to class members on February 23, 2025, after Judge Kiel was forced to cancel the first final fairness hearing. By the time the second notice was sent to the class, the parties had reached an agreement regarding attorney fees. The second notice that advised class members of the new date for the final fairness hearing and also stated: "[t]he Parties have agreed to propose that the Court award $66,362.50 to Class Counsel for attorney's fees and expenses of class counsel." (Bridley Decl. #2, ECF No. 79-2, Ex. A at 1). The second notice was mailed via U.S. First-Class Mail using the current address information available from the previous notice dissemination. (*Id.* Ex. 2 ¶ 4). Of the 52 second notices mailed, six were returned as undeliverable (*Id.* ¶ 5). One included a forwarding address and was remailed. (*Id.*). Of the other five undeliverable records, three were sent to a professional service for address tracing.[8] (*Id.*) New address information was obtained for only two of the three undeliverable notices. (*Id.*). The notice was remailed to all three addresses, including the two from which new information was obtained, and the one notice in which new information was not obtained. (*Id.*). Of these three mailings, two were returned to Atticus a second time as undeliverable. (*Id.*). Accordingly, 47 out of 52 second notices were successfully sent. (*Id.*). Class members had until March 20, 2025 to submit a written objection to the proposed fee and cost award. (*Id.* ¶ 6). No objections were received. (*Id.*).

---

[8] It is unclear from the moving papers why the remaining two undeliverable mailings were not also traced. However, the issue is mooted by the fact that the third notice was successfully delivered to 51 of the 52 class members.

**Third Set of Notices**

The class notice was required to be sent for a third time to notify class members of the new final fairness hearing date, after the Court was forced to adjourn the second date because the moving papers were not timely filed. (ECF No. 76). Class counsel submitted an updated certification from Atticus on May 25, 2025. (Bridley Cert. #3, ECF No. 81). The Third Notice was sent on May 6, 2025 to each of the 52 class members in the same manner as the previous two notices. (*Id.* ¶ 4). Only one notice was undeliverable. (*Id.* ¶ 5).[9] Because there were no response deadlines in this notice, it was not traced for remail. (*Id.*).

## GOVERNING LAW/ANALYSIS

### I.    Motion for Final Approval

#### A.    Preliminary Approval

Then-Magistrate Judge Kiel granted preliminary approval of the class action settlement on December 7, 2023. (ECF No. 40). Accordingly, this requirement has been met.

#### B.    Requirements for Class Certification under Fed. R. Civ. P. 23

The Third Circuit has observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995). "The requirements of [Rule 23] (a) and (b) are designed to ensure that a proposed class has 'sufficient unity so that absent class members can fairly be bound by decisions of class representatives.'" *In re Prudential Ins. Co. Am. Sales Prac.*

---

[9] Two paragraphs in the third certification were mistakenly labeled as paragraph 4. This cites to the second paragraph labeled paragraph 4.

*Litig. Agent Actions*, 148 F.3d 283, 309 (3d Cir. 1998) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997)).

### 1. Fed. R. Civ. P. 23(a) Requirements

The requirements of Rule 23(a) must be met whether certification is sought for the purpose of proceeding with litigation or, as here, for settlement. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 379 (3d Cir. 2013). Class certification is appropriate where the prospective class establishes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); (4) and the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). Factual findings in support of Fed. R. Civ. P. 23 must be proven by a preponderance of the evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

### i.    Numerosity

Generally, the numerosity requirement is satisfied if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (internal quotations omitted). Here, there are 52 class members. (Settlement Agreement Addendum at 1). Therefore, the numerosity requirement is satisfied.

### ii.    Commonality

Fed. R. Civ. P. 23(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and their claims must depend on a common contention of such a nature that it is capable of class-wide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Being capable of

9

class-wide resolution "means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.

Here, commonality is easily satisfied, as all class members have suffered the same injury – they were sent allegedly misleading collection letters from Defendants, purportedly in violation of the FDCPA and NJCFA. Courts in this District have found the commonality requirement satisfied in other class actions under the FDCPA. *See Beneli v. BCA Fin. Svcs. Inc.*, 324 F.R.D. 89, 97 (D.N.J. 2018) (finding commonality requirement satisfied in FDCPA action where "[s]ettlement [c]lass members have identical legal claims under the FDCPA, based upon a standardized collection letter sent by [defendant] to [p]laintiff and each [s]ettlement [c]lass member, satisfying the commonality requirement"); *Weissman v. Gutworth*, No. 14-cv-666 (WHW) (CLW), 2015 WL 3384592, at *2 (D.N.J. May 26, 2015) (finding commonality met where "[p]laintiff and all class members received debt collection letters from [d]efendants[.]"). Accordingly, the commonality requirement is met.

### iii.    Typicality

The typicality requirement "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)). The typicality requirement "does not require that all putative class members share identical claims." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Instead, "so long as 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.'" *Id*. (internal citations omitted). "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 51 (3d Cir.

1994). The Third Circuit has set a "'low threshold' for typicality," and courts seek to "ensure[] the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Nat'l Football League*, 821 F.3d at 428 (quoting *Newton*, 259 F.3d at 182-83).

Here, Plaintiff's claims are typical of those of the Settlement Class. Both he and the class members claim they were harmed when Defendants sent them allegedly misleading collection letters and instituted collection lawsuits. Accordingly, the typicality requirement is satisfied.

### iv.    Adequacy of Representation

This fourth factor tests the qualifications of class counsel and representatives, and "aims to root out conflicts of interests within the class to ensure that all class members are fairly represented in the negotiations." *In re Nat'l Football League*, 821 F.3d at 428. The Court must assess the qualifications of class counsel and representatives, and also "root out conflicts of interests within the class to ensure that all class members are fairly represented in the negotiations." *Id.*

### a.    Class Representatives

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Class representatives must represent a class "capably and diligently." *In re Nat'l Football League*, 821 F.3d at 430. A "minimal degree of knowledge" about the litigation is adequate. *Id.* The Court must look toward the proposed class representatives to determine whether there is any conflict between their claims and those asserted on behalf of the class, and their ability and incentive to vigorously represent the interests of the class. *See Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 101 (3d Cir. 2013).

Here, William Burrows is the proposed class representative. As discussed during the preliminary approval hearing, the parties agreed that:

> Burrows actively participated in the drafting of the pleadings and in
> this litigation generally, that Burrows refrained from seeking relief
> just for himself in order to obtain relief for the entire class, and that
> his name is now associated for better or worse with having been a
> litigant in a FDCPA class action.

(Preliminary Approval Tr., 10:4-11). Plaintiff has vigorously pursued a settlement on behalf of all class members that brings them relief they might not have otherwise recovered. Accordingly, the Court finds that Plaintiff is an adequate class representative who helped bring this matter to successful resolution, for himself and other consumers who were allegedly harmed by Defendants' actions.

### b.    Class Counsel

The Court evaluates class counsel under the Rule 23(g) factors, which include the work counsel has performed in identifying and investigating potential claims; counsel's experience handling class actions, complex litigation, and the types of claims asserted; counsel's knowledge of applicable law; and the resources counsel will commit to the representation. Fed. R. Civ. P. 23(g)(1)(A). The Court must weigh three criteria, whether class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the Defendants. *Beltran v. SOS Ltd.*, No. 21-cv-7454 (RBK) (EAP), 2023 WL 319895, at *11 (D.N.J. Jan. 3, 2023) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 801). Here, Plaintiff proposes that David C. Ricci, Esq. serve as class counsel.

First, the Court must assess whether Class Counsel possesses adequate experience. David C. Ricci, Esq., has been practicing in the area of consumer rights for over 13 years. (Firm Resume, ECF No. 79-2, Ex. 3). He has litigated several FDCPA cases in New Jersey. (*Id.*). He served as Chair of the Consumer Protection Law Special Committee of the New Jersey State Bar Association from 2019-2022. (*Id.*). He is also a member of the National Association of Consumer Advocates. (*Id.*). He has litigated class actions in this District, and his experience has been noted in other

matters. *See e.g., Martina v. L.A. Fitness Int'l, LLC*, No. 12-cv-2063 (WHW), 9, at *8 (D.N.J. Oct. 8, 2013) (finding class counsel in FDCPA class action, which included David. C. Ricci had "substantial class action experience"). Mr. Ricci has been appointed as class counsel in eleven class actions. (Ricci Decl., ECF No. 79-1, ¶ 16).  Accordingly, the Court finds Mr. Ricci has adequate experience.

Next, the Court analyzes whether proposed Class Counsel vigorously prosecuted the action. Here, this matter was extensively litigated for three years. The parties participated in nine status conferences with the Court, completed discovery, addressed issues pertaining to Defendants' former counsel, engaged in lengthy settlement discussions, and drafted and filed motions for preliminary and final approval. Counsel also investigated the claims, drafted the pleadings, performed legal research, and worked with the settlement administrator. Accordingly, the Court finds Mr. Ricci vigorously prosecuted this action.

Finally, the Court must assess whether the settlement was brought about as the result of an arm's length negotiation. Here, the parties participated in mediation with a private mediator who is a retired judge and then continued negotiations for several months. Thereafter, even when Defense counsel withdrew, the parties continued to negotiate to ultimately reach an agreement on attorney's fees and costs. There is nothing to suggest this was anything other than an arm's length negotiation.  Accordingly, the Court finds Class Counsel is sufficient.

### 2.    Fed. Civ. P. 23(b) Requirements

The parties must also demonstrate the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)." *Beltran*, 2023 WL 319895, at *12 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 345). Here, Plaintiff relies on Fed. R. Civ. P. 23(b)(3), which applies when "questions of law or fact common to class members predominate over any questions affecting only individual

members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

### i.    Predominance

The predominance inquiry tests "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). "Predominance probes whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *McGowan v. CFG Health Network*, *LLC*, No. 22-cv-2770 (ZNQ) (RLS), 2024 WL 1340329, at *16 (D.N.J. Mar. 28, 2024). "The focus of the predominance inquiry is on liability, not damages." *Smith v. Suprema Specialties, Inc.*, No. 02-cv-168 (WHW), 2007 WL 1217980, at *9 (D.N.J. Apr. 23, 2007). Here, this requirement is easily satisfied as all class members were harmed by the same alleged conduct by Defendants – being sent collection letters attempting to collect debts in violation of the FDCPA and NJCFA. Because Defendants' conduct was common as to all members, the predominance requirement is satisfied.

### ii.    Superiority

The superiority requirement asks the district court 'to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005) (citing *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996), *aff'd*, 521 U.S. 591, 138 (1997)). Pertinent matters in this inquiry include:

> (A)    the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

      (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]

      (D)    the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). When, as here, certification of the class is solely for the purpose of settlement, a showing of manageability for trial is not required. *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 347 (D.N.J. 2020).

      Here, a class action is a superior method to individual adjudication because each individual claim has a relatively low monetary value. Class members might not be inclined to pursue their claims individually. Further, the cost of litigation on an individual basis would exceed the value of any one claim. A class action therefore provides a superior means of obtaining a more efficient recovery for more class members. The Court is therefore satisfied that a class action is the superior method of adjudication in this case.

## C.  Notice Requirements

      Next, the Court must determine if potential class members were properly notified. For classes certified under Fed. R. Civ. P. 23(b)(3), such as this one, Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Beneli*, 324 F.R.D. at 100. The Court has already ruled that the proposed method of dissemination of the notice was reasonable. (Preliminary Approval Tr., 9:20-25). The Court finds that the notice program satisfied due process.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950).

As outlined above, Atticus took numerous steps to ensure the best practicable notice of all potential class members. All three notices sent to the class contained contact information for Class Counsel and Atticus. It set forth the amount of the settlement and explained how to object or opt out. There was a success rate of over 90% for delivery, with the third notice being successfully delivered to 51 out of 52 class members. *See Beneli*, 324 F.R.D. at 97 (finding notice was proper in class action where 93% of class members received notice). The Court is therefore satisfied that the process of notifying class members satisfied due process requirements.

### D.  Whether the Settlement is Fair, Reasonable, and Adequate under Fed. R. Civ. P. 23(e)

The Court next turns an analysis of the proposed settlement. The Court may only approve the settlement after a hearing and only upon a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). This includes consideration of whether: the class representatives and counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate; and the proposal treats class members equitably relative to each other. *Id.* In determining whether the relief is adequate, the Court must consider: the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3). *Id.* In this Circuit, settlement of class actions is favored. *See, e.g.*, *Erheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing that:

> The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings . . . . Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts [and] the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial).

In assessing the reasonableness of the settlement, the Court must be mindful that "[s]ettlements . . . reflect[] negotiated compromises. The role of a district court is not to determine whether the settlement is the fairest possible resolution [but only whether] the compromises reflected in the settlement . . . are fair, reasonable and adequate when considered from the perspective of the class as a whole." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013).

To review the settlement, courts in this circuit analyze the settlement using nine factors from *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), as well as the permissive and non-exhaustive factors from *In Re Prudential Ins. Co.*, 148 F.3d at 323. The *Girsh* Factors include:

(1)    the complexity, expense and likely duration of the litigation;
(2)    the reaction of the class to the settlement;
(3)    the stage of the proceedings and the amount of discovery completed;
(4)    the risks of establishing liability;
(5)    the risks of establishing damages;
(6)    the risks of maintaining the class action through the trial;
(7)    the ability of the defendants to withstand a greater judgment;
(8)    the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
(9)    the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157. It is the settling parties' burden to demonstrate that the *Girsh* factors weigh in favor of approving the settlement. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (citations omitted).

Here, the settlement provides for a total settlement fund of $3,250. (Settlement Agreement Addendum at 1). It will be evenly divided among 52 class members. (*Id.*). Each class member will receive $62.50.

1.      **The Complexity, Expense, and Likely Duration of Litigation (Factor #1)**

The first *Girsh* factor, the complexity, expense, and likely duration of litigation, favors approval. This factor considers "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)). "Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *Yedlowski v. Roka Bioscience, Inc.*, No. 14-cv-8020 (FLW) (TJB), 2016 WL 6661336, at *12 (D.N.J. Nov. 10, 2016) (quoting *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-cv-374 (JAP), 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008)).

Even though this matter is not complex as other class actions, that does not necessarily preclude this factor from weighing in favor of settlement. *See Beneli*, 324 F.R.D. at 102 (finding this factor weighed in favor of approval in FDCPA class action because "[c]onsidering the potential risks and expenses associated with continued prosecution of the case, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate."). If the matter did not settle, there would be a lengthy and complicated discovery period. The case would then proceed to dispositive motions, class certification motions, trial, and inevitable appeal. All this would take an extended time period and result in fees that would quickly obscure the total value of the claims, even if Plaintiff fully prevails. There is also risk that Plaintiff might not prevail on a dispositive motion or at trial, resulting in no relief. Accordingly, this factor weighs in favor of settlement.

2.      **The Reaction of the Class to the Settlement**

No class members have opposed the settlement or requested exclusion. *See Griffin v. Zager*, No. 16-cv-1234 (ES) (MAH), 2017 WL 3872401, at *7 (D.N.J. Sept. 1, 2017) ("The fact that no

member objected or opted out of the settlement weighs heavily in favor of settlement."). Therefore, this factor weighs in favor of final approval.

### 3. The Stage of the Proceedings and the Amount of Discovery to be Completed (Factor #3)

"This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-cv-905, 09-cv-1248, 09-cv-4587 (MF), 2011 WL 1344745, at *12 (D.N.J. Apr. 8, 2011). Here, this litigation has been pending since January 20, 2022. The parties underwent discovery, attended mediations, and negotiated a settlement over several months. The Court is satisfied that Class Counsel performed enough discovery and appreciated the merits of the case as to warrant a settlement at this time. Accordingly, this factor weighs in favor of settlement.

### 4. The Risks of Establishing Liability and Damages (Factors #4 and #5)

"Courts commonly analyze the fourth and fifth *Girsh* factors together." *Beltran*, 2023 WL 319895, at *5 (internal citations omitted). These factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarian Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal citations omitted). This inquiry "requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (quoting *In re Prudential Ins. Co.*, 148 F.3d at 319).

This factor weighs in favor of settlement. As an initial matter, a finding of liability is never a sure thing. Defendants in this case vigorously defended against this matter and felt confident they would prevail. There are both legal and factual disputes that would have to be resolved in

Plaintiffs favor to establish liability. Thus, while Plaintiffs were confident in their claims, proceeding to trial involved some risk that Plaintiffs might not prevail in this case.

Even if Plaintiffs established liability, the amount of damages the class could recover is uncertain. The FDCPA limits damages in a class action to the lesser of $500,000, or 1% of Defendants' net worth. 15 U.S.C. § 1692k(a)(2)(B). Defendants would likely contest their net worth, and "[e]stablishing net worth at trial would most likely be a battle of the experts, and ultimately a jury question." *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 753 (D.N.J. 2009); *see Griffin*, 2017 WL 3872401, at *8 ("[S]ince there is a risk that [plaintiff] and the class will not be able to establish [defendant]'s net worth at an amount great enough to allow damages equal to the [s]ettlement [f]und, the Court finds this factor weighs in favor of settlement."). Here, Class Counsel has reviewed confidential discovery and is satisfied that the $3,250 relief for the settlement class exceeds the maximum allowable recovery. (Ricci Decl. ¶ 10).

Given the uncertain in establishing liability or damages, this factor weighs in favor of settlement.

### 5.    The Risks of Maintaining the Class Action Through Trial (Factor #6)

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarian*, 391 F.3d at 538. As stated in *In re Gen. Motors*:

> The value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.

55 F.3d at 817. The Third Circuit has acknowledged this exercise is somewhat "perfunctory" because district courts retain the discretion to decertify or modify a class that becomes unmanageable. *In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003). Here, the

Court cannot find the class would be "vulnerable to decertification or modification" later in the litigation. *Griffin*, 2017 WL 3872401, at *8. The theory of liability is straightforward, and all class members were impacted in the same way. This factor is therefore neutral.

### 6.    The Ability of Defendants to Withstand a Greater Judgment (Factor #7)

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *In re Cendant Corp.*, 264 F.3d 201, 240 (3d Cir. 2001). While Class Counsel does not specifically address this factor in their brief, the fact that Class Counsel reviewed Defendants' confidential financials and concluded that $3,250 exceeded the maximum allowable recovery (i.e., exceeded 1% of Defendants' net worth) strongly suggests that Defendants are not in a position where they could withstand a larger judgment.

Even if Defendants could withstand a greater judgment – it has been repeatedly recognized in this District that the relative financial resources of a defendant do not themselves render a settlement unreasonable. *See, e.g.*, *Oliver v. BMW of N.A., LLC*, No. 17-cv-12979 (CCC) (MF), 2021 WL 870662, at *8 (D.N.J. Mar. 8, 2021); *Yaeger v. Subaru of Am., Inc.*, No. 14-cv-4490 (JBS) (KMV), 2016 WL 4541861, at *11 (D.N.J. Aug. 31, 2016). "[T]he fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538. Here, class members received more than what they were entitled to receive under the FDCPA. Defendants would not be obligated to pay more than the proposed settlement under the law. Therefore, it is irrelevant that Defendants could afford a greater judgment. This factor weighs in favor of settlement.

**7.    The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and All the Attendant Risks of Litigation (Factors #8 and #9)**

The last two factors evaluate whether the settlement represents a fair value for a weak case or poor value for a strong case. *In re Warfarin*, 391 F.3d at 558. The settlement provided for here is significant in light of Plaintiff's potential best recovery should they ultimately prevail at trial. As explained above, the class will face significant challenges proving damages. Under 15 U.S.C. § 1692k(a)(2)(B), Plaintiff's maximum damages are capped at the lesser of $500,000 or 1% of the debt collector. The settlement provides each class member with $62.50. Even if Plaintiff took this case all the way to trial and prevailed, this is likely their maximum recovery. In other words, the settlement provides the class with full relief.

In addition, as described above, there are risks in continuing this litigation. If the parties did not reach a settlement, the parties would have continued through discovery, filed dispositive motions, and likely, faced trial. Defendants continue to deny any liability. (Settlement Agreement at 1). Accordingly, this factor once again weighs in favor of settlement.

**E.  The *Prudential* Considerations**

Since *Girsh*, the Third Circuit has held that, because of the "sea-change in the nature of class actions," it may be helpful to expand the *Girsh* factors to include permissive and non-exhaustive factors, including:

> [1] [T]he maturity of the underlying substantive issues . . . ; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved — or likely to be achieved — for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Pet Food Prods.*, 629 F.3d at 350 (quoting *In re Prudential Ins. Co.*, 148 F.3d at 323). *See In re Baby Prods.*, 708 F.3d at 174 ("Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive, 'illustrat[ing] . . . [the] additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms.'") (internal citations omitted). "The Court does not have to perform analysis on each *Prudential* factor – rather it must address the factors that are relevant to the particular case at hand." *Castro v. Sanofi Pasteur, Inc.*, No. 11-cv-7178 (MCA), 2017 WL 4776626, at *6 (D.N.J. Oct. 20, 2017).

Here, class members were able to opt out. None did. The settlement affords the class a full recovery under the statute. As discussed further below, the provision for attorney's fees is reasonable. The procedure for processing claims was reasonable, as virtually all class members received notice and were given clear direction to submit their requests for exclusion and their objections to the settlement. The relevant *Prudential* factors further weigh in favor of settlement.

Plaintiffs do not raise in their brief the fact that any uncashed checks will be donated as a *cy pres* award to LSNJ. The court finds this *cy pres* award to be appropriate in the instant case and does not render the settlement unfair. While direct distributions are usually preferred over *cy pres* distributions, *see In re Baby Prods.*, 708 F.3d at 173, here class members are already receiving more than they are statutorily entitled to under the FDCPA and are therefore already made whole. The Court would not want to reward Defendants with low class participation by allowing unclaimed checks to revert back to them. *See id.* at 172. Accordingly, the *cy pres* award makes sense, and courts in this District have approved *cy pres* awards in similar class actions. *See Martina v. L.A. Fitness Int'l, LLC*, No. 12-cv-2063 (WHW), 2013 WL 5567157, at *8 (D.N.J. Oct. 8, 2013) (approving *cy pres* award to LSNJ in FDCPA class action); *Weissman*, 2015 WL 3384592, at *6

(approving *cy pres* award to Essex-Newark Legal services in FDCPA case). Accordingly, the Court takes no issue with the *cy pres* award in the instant settlement.

## II.    Motion for Attorney's Fees and Expenses

The court next turns to the issue of the agreed-up attorney's fee award. Plaintiffs' unopposed motion seeks an attorney fee award of $66,362.50.

An award of attorneys' fees in a class action settlement is within the Court's discretion. *Rossi v. Procter & Gamble Co.*, No. 11-cv-7238 (JLL), 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013). "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The FDCPA is a fee shifting statute that mandates attorney's fees and costs to be awarded to a prevailing party. 15 U.S.C. § 1692k(a)(3). There are two methods to calculate attorney's fees – the percentage-of-recovery method or the lodestar method. *Beneli*, 324 F.R.D. at 106. In FDCPA cases, the lodestar method is the appropriate method for awarding fees. *Id.*

### A.    The Lodestar

At the time of filing their motion, Class Counsel had expended 128 hours on this litigation.[10] (Time Log, ECF No. 80-2). Having reviewed the time expended, the Court finds the 128 hours to be reasonable. This matter has been pending since November 2021. One-hundred and twenty-eight hours over almost four years of litigation is inherently reasonable. (*Id.*). Class Counsel drafted pleadings, investigated Plaintiffs' claims, engaged in discovery, participated in mediation, negotiated extensively with Defense counsel, drafted three different sets of class notices, and drafted the underlying motion papers for preliminary and final approval of the

---

[10] The Court further notes that Mr. Ricci's time log did not include the time he spent at the Final Fairness Hearing on June 16, 2025.

settlement papers. (*Id.*). After reviewing the time records, the Court does not find that the time expended by Plaintiffs' counsel was either unreasonable or excessive. Thus, the amount of time for which a lodestar is requested is reasonable.

Turning to rate, Plaintiffs' attorney fee application bills all hours spent by David Ricci, Esq. at a rate of $525 per hour. (*Id.*). Mr. Ricci's rate prior to January 1, 2023 was $475.00. (Ricci Fee Decl., ECF No. 80-1 ¶ 7). Thereafter, Mr. Ricci's hourly rate increased to $525.00. (*Id.*). Mr. Ricci applied his current hourly rate to all hours worked in this matter, including those worked prior to January 1, 2023. Class Counsel incurred expenses in the amount of $256.25. (*Id.*). There is nothing in the motion papers to explain why an increased hourly rate should apply retroactively.

While this would normally require an adjustment, it is not necessary here because the retroactive increase is of no consequence. Namely, even if the 30.3 hours Class Counsel spent on this matter prior to January 1, 2023 were billed at his lower rate of $475 per hour, it would not necessitate a downward adjustment of the fee award. Thirty and three-tenths hours at $475 per hour would result in a lodestar of $14,392.50. The lodestar *after* counsel's rate increase, of 97.7 hours at a rate of $525, would be $51,292.50. Therefore, the total lodestar, calculated using Class Counsel's lower rate for 30.3 hours and higher rate for 97.7 hours is $65,941.25, including expenses. That is only slightly less than the $66,362.50 sought, a negligible 1.0064 multiplier. However, Class Counsel has certified he will spend at least $7,500 more in legal fees administering the settlement, distributing the checks, and processing the *cy pres* payments if needed, which would bring the grand total of legal fees and expenses to $73,441.25. This means the proposed attorney fee award of $66,362.50 is below the total lodestar, or a 0.898 multiplier. In short, the proposed attorney fee award does not result in any windfall to Plaintiff's counsel, compensate him only for actual time spent, and is less than Class Counsel would likely receive at trial (because many more

hours would be expended, and the claims involve a fee shifting statute). Accordingly, the Court finds the proposed fee award to be in line with the lodestar, despite the fact that all time was billed at Class Counsel's higher rate of $525.

### B. The *Gunter* Factors

Traditionally, courts consider the following factors in determining the appropriate award of attorney's fees in a class action: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F. 3d 190, n.1 (3d. Cir. 2000). In the District of New Jersey, "courts routinely approve agreed-upon attorney's fees when the amount is independent from the class recovery and does not diminish the benefit to the class." *Oliver*, 2021 WL 870662, at *10 (collecting cases). Each factor is addressed in turn below.

### 1. The Fund Is Substantial and Confers a Benefit Upon the Class Members

This factor considers the fees requested as compared to the number of class members to be benefitted. *Beneli*, 324 F.R.D. at 108. Here, there are 52 class members who will each receive a check for $62.50. Here, there is no fund to consider, and the attorneys fee award is not being paid out of the settlement fund and is being separately paid to Class counsel by Defendants. Stated differently, no money is being taken from the class to pay counsel fees. Under these circumstances, the Court need not apply an elevated level of scrutiny to the award. *See McBean v. City of Newark*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) ("If, however, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is

greatly reduced, because there is no conflict of interest between attorneys and class members."). Moreover, the settlement provides a substantial benefit for settlement class members, as each class member will receive $62.50, which is a full recovery of what they would have received had they prevailed at trial. *See Beneli*, 324 F.R.D. at 108 (finding this factor met in FDCPA class action where class counsel requested $15,000 in fees and costs, with a settlement fund of $10,000, and 2,612 class members received a $3.82 benefit). The recovery amount to attorney fee ratio in this matter is significantly higher than in *Beneli*, which suggests it is fair. Therefore, the Court finds this factor to be easily satisfied.

### 2. Absence of Objection to the Fee Request

As of today's date, there are no objections to the requested attorney fee, even though it was sent to class members twice via the second and third class notices. Accordingly, this weighs in favor of approving the requested fee.

### 3. Class Counsel Prosecuted This Action with Skill and Efficiency

As discussed in the Court's analysis of the Fed. Civ. P. 23(b) factors, class counsel is highly experienced in this type of litigation. Mr. Ricci's experience has undoubtedly shepherded this case toward the present settlement. Counsel's efforts, supported by the named Plaintiff, are responsible for the resulting settlement. The matter was litigated for three years, dealt with issues regarding Defendants' former counsel, and issues in settling the proposed attorney fee award in this case. Class counsel dealt with all of these difficulties and ultimately achieved a settlement better than the class would be entitled to if this matter had to be tried. This certainly speaks to the skill and efficiency of counsel and weighs in favor of approving the requested attorney fees.

#### 4.   The Complexity, Expense, and Likely Duration of Litigation

This litigation has been pending for over three years. Several additional years of litigation would have been likely if this matter did not settle, given additional discovery, class certification motions, substantive dispositive motions such as summary judgment and, ultimately, if the case survived all of that, a trial and the inevitable appeals. It could be years before the matter is concluded and Plaintiffs were to see even a dime in recovery. Accordingly, this factor weighs in favor of awarding counsel fees.

#### 5.   Class Counsel Undertook the Risk of Non-Payment

Fifth, the Court must assess Plaintiffs' counsel risk of non-payment. The risk of no recovery was substantial due to the challenges of litigation, including certification, summary-judgment motion practice, and potential preparation for trial. *See In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432 (DMC) (JAD), 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval.") (citations omitted). In short, there is always a risk of no recovery. Class Counsel has litigated this matter for almost four years without being paid. They outlaid a significant amount of money towards expenses. They shouldered this risk knowing they might not receive any recovery. Accordingly, the fifth factor supports the agreed upon fee award.

#### 6.   Class Counsel Spent Significant Time Investigating and Litigating the Case

Class Counsel billed 128 hours to this matter. They provided detailed time records that set forth the time spent. As set forth above, Class Counsel investigated the case, reviewed discovery and financial documents, had many discussions with Defense counsel, drafted pleadings and motion papers, appeared in Court, and participated in settlement discussions and mediation. Thus,

Class Counsel devoted significant time investigating and litigating this case, and this factor also weighs is favor of the fee award.

### 7. The Court's Award Is Consistent with Awards in Similar Cases

Class Counsel performed 128 hours of work on this case and seeks $66,362.50 in attorney's fees. This is similar to the fees awarded in other FDCPA class actions in this Circuit. *See Beneli*, 324 F.R.D. at 108 (approving $15,000 in fees and costs, where counsel worked 40.9 hours with a settlement fund of $10,000, and 2,612 class members received a $3.82 benefit); *Griffin* 2017 WL 3872401, at *11 (approving $28,000 in fees and costs where counsel committed 66.03 hours, in class action with $3,000 settlement fund and 124 class members, providing each member with a $24.19 benefit); *Weisman*, 2015 WL 3384592, at *7 (collecting cases). Accordingly, this factor weighs in favor of awarding attorney's fees.

As all the *Gunter* factors weigh in favor of awarding fees, the Court hereby approves the requested fee of $66,362.50.

### C. Expenses

The Court now turns to expenses. In support of the Motion for Final Approval (ECF No. 79), a certification was submitted by the claims administrator setting forth the cost of administration to be $7,300. (Bridley Decl. #1 ¶ 9). Atticus, the claims administrator, was responsible for sending three rounds of notice to 52 class members. They had to process responses and address any notices that were undelivered. $7,300 for 156 notices, including necessary follow-up, is not unreasonable. Accordingly, the Court finds that Atticus shall be awarded $7,300.

### D. Plaintiff's Service Award

"Courts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Bernhard v. TD Bank, N.A.*, No. 08-cv-4392 (RBK) (AMD), 2009 WL 3233541, at *2 (D.N.J. 2009) (quoting

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *see also McGee v. Cont'l Tire N. Am., Inc.*, No. 06-cv-6234 (GEB), 2009 WL 539893, at *18 (D.N.J. Mar. 4, 2009) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002)) ("Incentive awards are 'not uncommon in class action litigation").

Counsel seeks to approve a service award for Plaintiff in the amount of $1,750, comprised of $1,750 in recognition of his efforts to settlement class. (Final Approval Br., ECF No. 79 at 13). No objections were received. Plaintiff has been involved in this matter since its inception, has assisted Class Counsel in investigating the claims and has diligently represented the interests of all class members throughout this litigation. Accordingly, the Court approves the $1,750 incentive award to Plaintiff for his efforts.

## **CONCLUSION**

In sum, the Court grants the unopposed motions for final approval of the class action settlement and the unopposed motion for attorney's fees, expenses, and service award for the named plaintiff.